La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
En esta ocasión debemos determinar si procede el pago de la totalidad de la indemnización a un menor que ha sufrido daños a raíz de un accidente donde intervino la negligencia de su progenitor. Resolvemos en la negativa.
Examinemos los hechos que originan la presente controversia.
I — i
El 9 de agosto de 2002 el menor B.M.C., quien para esa fecha contaba con tres años de edad, fue atropellado por el Sr. José P. Rosario Soto en la vía principal del Condominio Plaza del Parque (Condominio) ubicado en el municipio de Trujillo Alto, donde ambos residían. De acuerdo con las de-terminaciones de hecho del Tribunal de Primera Instancia, el niño se encontraba jugando en el área de recreación pa-siva del complejo residencial bajo la supervisión de su padre, el Sr. William Marcano Serrano. Este último se apartó momentáneamente del área de juegos para conversar con un vecino que se había estacionado en la calle frente al parque. Entretanto, el niño intentó cruzar la vía principal para dirigirse hasta donde se encontraba su padre. Es en ese momento que el señor Rosario Soto , lo impacta cón su *174 vehículo de motor. Al escuchar el golpe, el señor Rosario Soto retrocedió la marcha de su vehículo, pasando por en-cima de las piernas del menor, quien se encontraba tendido boca abajo en el suelo. Al momento del accidente, la madre del menor se encontraba en el balcón de su apartamento, ubicado cercano al parque, conversando con una vecina.
Inmediatamente después del accidente, el señor Mar-cano Serrano recogió al niño y lo llevó hasta su aparta-mento para limpiarle las heridas del rostro. El propio se-ñor Rosario Soto los transportó hasta el Hospital Auxilio Mutuo, donde brindaron cuidado médico al menor.
A raíz de estos hechos, el 12 de septiembre de 2002, los Srs. William Marcano Serrano y Vilma Colón Santos, com-pareciendo por sí y en representación de la Sociedad Legal de Gananciales compuesta por ellos y del menor B.M.C., presentaron la demanda de daños y perjuicios de epígrafe contra el Sr. José P. Rosario Soto, la Sra. Joanne Jovet Le Hardy(1) y la Cooperativa de Seguros Múltiples (Cooperativa). Alegaron que el señor Rosario Soto había atropellado al menor mientras conducía el vehículo propiedad de la codemandada Joanne Jovet Le Hardy, a favor del cual exis-tía una póliza de seguro de la Cooperativa. Sostuvieron que el accidente se debió a la exclusiva culpa y negligencia del señor Rosario Soto, quien conducía descuidadamente y sin observar las debidas precauciones. Alegaron que el me-nor había sufrido daños físicos y morales valorados en $300,000, y estimaron sus propios daños en concepto de sufrimientos e ingresos dejados de percibir en $100,000.
Los demandados contestaron la demanda. Aceptaron que el accidente había ocurrido, pero negaron que el mismo fuera producto de la exclusiva culpa y negligencia del señor *175 Rosario Soto. Alegaron, en cambio, que el accidente se de-bía a que el niño había cruzado súbitamente la carretera por no estar debidamente supervisado por sus padres.
Los demandados también presentaron una demanda contra tercero contra la Asociación de Condominos del Con-dominio Plaza del Parque (Asociación de Condominos), su aseguradora MAPFRE/PRAICO y la compañía de seguri-dad del Condominio, S.O.S. Security Services. Alegaron que los terceros demandados habían contribuido a que ocu-rriera el accidente al no instalar suficientes reductores de velocidad ni rotulación, además de que el guardia de segu-ridad no había controlado adecuadamente el flujo vehicular en el área. La Asociación de Condominos y MAPFRE/ PRAICO contestaron la demanda contra tercero negando las alegaciones de negligencia en su contra, aunque acep-taron que ocurrió el accidente. Formularon, además, una reconvención contra los señores Rosario y Jovet y de la Cooperativa, aduciendo que el accidente se debía a su ex-clusiva negligencia.
La demanda contra tercero fue enmendada posterior-mente para incluir como demandada a National Insurance Company (National Insurance), también aseguradora del Condominio. Al contestar la demanda contra tercero en-mendada, la Asociación y MAPFRE/PRAICO incluyeron una alegación de negligencia contra los demandantes y rei-teraron su reconvención contra los señores Rosario y Jovet, y de la Cooperativa.
Por su parte, los demandantes presentaron una Pri-mera Demanda Enmendada para incluir como demanda-dos directos a la Asociación de Condominos y a sus asegu-radoras, MAPFRE/PRAICO y National Insurance. Tanto los demandados originales como la Asociación de Condomi-nos y sus aseguradoras contestaron la demanda enmen-dada y reconvinieron contra los demandantes.
Finalmente, el Tribunal de Primera Instancia celebró el juicio en su fondo. La parte demandante presentó el testi- *176 monio de tres peritos especializados, respectivamente, en cirugía ortopédica y reconstructiva, psicología clínica y ci-rugía plástica. Los padres del menor testificaron en rela-ción con sus propios daños y, además, presentaron el testi-monio de la Sra. Silvette de Cuarcevil Pérez, quien al momento de los hechos fungía como administradora del Condominio.(2) Los codemandados presentaron, por su parte, el testimonio de la Sra. Luana Pérez, presidente de la Asociación de Condominos de dicho condominio al mo-mento de los hechos, y el del Sr. Emilio Román Muñoz, guardia de seguridad en funciones al momento del accidente.
Celebrado el juicio en su fondo, el Tribunal de Primera Instancia dictó sentencia en la que declaró “con lugar” la demanda de daños presentada por el menor contra los se-ñores Rosario y Jovet, y de la Cooperativa de Seguros Múltiples. Valoró los daños físicos sufridos por éste en $50,000 y concluyó que el señor Rosario Soto había incu-rrido en un 50% de negligencia. El restante 50% de respon-sabilidad lo imputó a los padres del menor. Por tal razón, redujo proporcionalmente la compensación del menor a $25,000.
En relación con las demandas contra la Asociación de Condominos y sus aseguradoras, y de la compañía S.O.S. Security Services, el tribunal decretó la desestimación de las mismas por no hallar prueba que sustentara una deter-minación de responsabilidad contra dichos demandados. De la misma manera, el Tribunal de Primera Instancia desestimó la causa de acción de los padres del menor. Fi-nalmente, el Tribunal consignó que dictaba la sentencia *177 sin la especial imposición del pago de costas, gastos u ho-norarios de abogado.
El Tribunal de Apelaciones confirmó dicha sentencia en todos sus aspectos. Inconforme aún, la parte demandante comparece ante este Foro para alegar la comisión de los errores siguientes:
Err[aron] el Tribunal de [I]nstancia y el Tribunal de Apela-ciones al imputarle al menor ... la negligencia de sus padres y reducir los daños adjudicados a su favor.
Err[aron] el Tribunal de [I]nstancia y el Tribunal de Apela-ciones al desestimar las acciones de los padres.
Err[aron] el Tribunal de [I]nstancia y el Tribunal de Apela-ciones al imputarle negligencia a la madre y el grado impu-tado al padre debe ser menor, si acaso.
Err[aron] el Tribunal de [I]nstancia y el Tribunal de Apela-ciones al desestimar las acciones contra el Condominio, MA-PFRE/PRAICO y Nátional Insurance Company.
Err [aron] el Tribunal de Instancia y el Tribunal de Apelacio-nes al no imponer costas y honorarios de abogad[o]..Certiorari, pág. 4.
El 9 de marzo de 2007 expedimos el recurso de certiorari presentado y, con el beneficio de la comparecencia de las partes, en el litigio procedemos a resolvér.
II
A. Como sabemos, en nuestro ordenamiento la responsabilidad civil extracontractual emana del artículo 1802 del Código Civil, que a tales efectos dispone que “[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado”. 31 L.P.R.A. see. 5141. Como se deduce del propio texto citado, para que prospere una acción por daños y perjuicios bajo dicho precepto es necesario que se pruebe la ocurrencia de una acción u omisión culposa o negligente que ocasiona un daño y la existencia del nexo causal entre ambos.
*178 El resto del Artículo 1802 del Código Civil establece que “[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización”. 31 L.P.R.A. see. 5141. Se trata de la codificación de la defensa de negligencia comparada incorporada al texto del Artículo 1802 mediante la Ley Núm. 28 de 9 de junio de 1956 y cuyo efecto es atenuar la responsabilidad de la parte demandada de acuerdo con el grado de negligencia desplegado por la parte demandante que contribuye a la producción de sus propios daños. Velázquez v. Ponce Asphalt, 113 D.P.R. 39, 47 (1982); Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). Es decir, dicha defensa no exime de responsabilidad a la parte demandada, sino que sólo la reduce.
En casos donde existe una alegación fundamentada de negligencia comparada, el tribunal está llamado a “individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia”. H.M. Brau Del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1986, Vol. I, pág. 410. Así, el juzgador debe determinar el monto de la compensación y el porciento de responsabilidad que corresponde a cada parte, restando de la compensación total la fracción de responsabilidad correspondiente a la parte demandante. En esta tarea, el juzgador debe analizar todos los hechos y circunstancias particulares de cada caso (Velázquez v. Ponce Asphalt, supra, pág. 47 y hacer referencia a precedentes o guías comparables que sirvan como base para la distribución de responsabilidad en el caso ante su consideración (Méndez Purcell v. A.F.F., 110 D.P.R. 130, 136 (1980)).
En su recurso de revisión, la parte peticionaria argu-menta que la imputación de 50% de responsabilidad a los padres del menor B.M.C. es excesiva. Tienen razón. Como hemos señalado, al fijar la fracción de responsabilidad co-rrespondiente a cada parte en un pleito de daños, el juzga- *179 dor debe analizar la totalidad de las circunstancias de cada caso y hacer referencia a los precedentes con hechos similares.
Analizados los hechos de este caso, entendemos que el mismo es comparable con Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357 (1982). Allí se impuso un 30% de res-ponsabilidad a la madre de un niño que murió mientras jugaba al ser arrollado por un camión perteneciente a la compañía demandada. Se deduce de los hechos allí reseña-dos que el niño estuvo jugando sin supervisión en la calle donde ocurrió el accidente durante un periodo de aproxi-madamente cuarenta y cinco minutos.
En el presente caso, el niño B.M.C. se encontraba ju-gando en el área recreativa de su condominio bajo la su-pervisión de su padre, quien se descuidó momentánea-mente para conversar con un vecino que transitaba por la calle frente al parque. De ello podemos derivar, primera-mente, que a la madre del niño no se le puede imputar ningún grado de negligencia, toda vez que al momento del accidente el menor se encontraba bajo el cuido y supervi-sión de su padre. Además, entendemos que no procede im-putarle un grado mayor de negligencia al señor Marcano Serrano que aquel imputado a la madre de la víctima en Ramos Acosta v. Caparra Dairy, Inc., supra. Tomando dicho precedente en consideración, y analizada la totalidad de las circunstancias, entendemos que al Sr. William Marcano Serrano le es imputable sólo un 15% de responsabili-dad por los daños sufridos por su hijo a raíz del accidente ocurrido el 9 de agosto de 2002.
De la misma manera, entendemos que erró el Tribunal de Primera Instancia al desestimar la causa de acción de los padres del menor, basándose exclusivamente en el he-cho de que éstos fueron responsables, en parte, de la ocu-rrencia del acto dañoso. Como hemos señalado, el propio texto del Artículo 1802 del Código Civil establece que la imprudencia concurrente del perjudicado no exime de res- *180 ponsabilidad al demandado, sino que conlleva la reducción de la indemnización. 31 L.P.R.A. see. 5141. En el presente caso, los padres del menor accidentado testificaron durante el juicio celebrado ante el Tribunal de Primera Instancia. De la transcripción de la prueba surge que éstos describie-ron los daños en concepto de sufrimientos, angustias men-tales e ingresos dejados de percibir que sufrieron a raíz del accidente. Es decir, sustentaron las alegaciones que a tales efectos incluyeron en su demanda. Por lo tanto, no proce-día desestimar su causa de acción sólo por el hecho de que desplegaron algún grado de negligencia.
B. No habiendo controversia en relación con el monto de la indemnización de $50,000 concedida al menor, proce-demos a considerar el argumento de los peticionarios a los efectos de que la reducción de dicha cuantía en proporción al grado de culpa de los padres, según practicada por el tribunal de instancia, tiene el efecto de imputar la negli-gencia de los progenitores al menor.
En múltiples ocasiones hemos establecido que a un niño pequeño “no se le puede imputar responsabilidad por sus actos u omisiones porque carece de prudencia, atención y discreción ...”. Laureano Pérez v. Soto, 141 D.P.R. 77, 91 (1996). Véase, además, Cruz v. Rivera, 73 D.P.R. 682, 692-693 (1952). Ello no impide, sin embargo, que se realice una alegación de negligencia comparada en contra de los padres del menor cuando éstos puedan ser responsables, en todo o en parte, de la ocurrencia del acto dañoso. Es en estos casos que la doctrina de negligencia comparada adquiere un matiz diferente, particularmente en relación con el pago de la compensación. Este tipo de controversia ha sido objeto de múltiples pronunciamientos de esta Curia y su análisis es imprescindible para la resolución de la presente controversia. Veamos.
La problemática fue atendida por primera vez en Quintana Martínez v. Valentín, 99 D.P.R. 255 (1970). Allí, un *181 niño murió arrollado al cruzar una carretera súbitamente. Su madre, padre y hermanos reclamaron indemnización en concepto de sus propios daños y peijuicios, sufridos a raíz del accidente. Se imputó un 40% de negligencia a la madre del niño por permitir que éste saliera de su inmediata pre-sencia y supervisión. En cuanto al pago de la indemniza-ción concedida, resolvimos que el demandado no debía responder a ninguno de los demandantes en exceso del 60% de responsabilidad que le fue imputado, aun cuando ni a dichos demandantes —a excepción de la madre— ni al menor fallecido se hubiera imputado algún grado de negligencia. Expresamos en esa ocasión que “los demandados no res-ponden por los daños en exceso de su grado de culpa”. Id. pág. 259. También expresamos que es sobre la totalidad de la cuantía de daños y no sobre la parte alícuota correspon-diente a cada uno de los demandantes, que debe calcularse la proporción de la concurrencia de culpas. Id., pág. 258.
Posteriormente, en Torres Pérez v. Medina Torres, 113 D.P.R., 72 (1982), revocamos la normativa de Quintana Martínez v. Valentín, supra. En este caso, una niña fue arrollada por un camión de helados. Se concluyó que la madre de la niña tenía un 50% de responsabilidad por per-mitir que la menor cruzara una calle sin supervisión. A diferencia de Quintana Martínez, en Torres Pérez, concluimos que tanto la niña, víctima directa del accidente a quien, por su corta edad, no se le podía imputar responsabilidad por sus actos, como su padre, quien no se encon-traba presente al momento de los hechos y, por lo tanto, no fue negligente, tenían derecho a cobrar el 100% de su indemnización. Nada se dijo en esa ocasión de las consecuencias que tal conclusión acarrearía para la causa de acción de la madre.
Este último aspecto fue atendido en Ramos Acosta v. Caparra Dairy, Inc., supra. En dicho caso, cuyas circuns-tancias ya hemos reseñado, se imputó a la madre del me-nor un 30% de negligencia. Concluimos que el demandado *182 debía responder al padre y hermanos de la niña por el monto total de sus daños, toda vez que a éstos no se le podía imputar negligencia según las circunstancias del caso. Sin embargo, dispusimos que dicho demandado po-dría descontar de la compensación adjudicada a la madre del menor el 30% en exceso de su porciento de responsabi-lidad pagado a los demás codemandantes.
Posteriormente atendimos Molina, Caro v. Dávila, 121 D.P.R. 362 (1988), caso en el cual una adolescente de die-cisiete años de edad fue atropellada por un automóvil mientras cruzaba una carretera. Concluimos que la adoles-cente había sido responsable en un 60% de sus propios daños. La controversia giró en torno a si la madre de la menor podría cobrar la totalidad de sus propios daños. Re-solvimos afirmativamente, amparados en el principio de Torres Pérez v. Medina Torres, supra.
El más reciente de nuestros pronunciamientos en esta materia fue realizado en Miranda v. E.L.A., 137 D.P.R. 700 (1994). Allí, los causahabientes de un adulto que murió a raíz de un accidente automovilístico presentaron una de-manda de daños y perjuicios contra varias entidades gubernamentales. El tribunal responsabilizó solidaria-mente a la Autoridad de Acueductos y Alcantarillados, la Autoridad de Carreteras y sus aseguradoras por el 50% de los daños causados. El restante 50% de responsabilidad fue imputado a la víctima fatal del accidente. Por consiguiente, el foro primario redujo en un 50% la cuantía de la indem-nización de los demandantes quienes, a su vez, impugna-ron dicho cómputo ante este Foro.
En esa ocasión resolvimos que cuando la víctima de un accidente es causante de sus propios daños, a sus causaha-bientes se les reducirá su compensación en la proporción de la culpa de la víctima. Ello, tanto en relación con la acción de daños heredada del patrimonio de la víctima, como en aquella que los causahabientes ejercitan por sus propios daños a raíz de la muerte de su pariente. Final-mente, revocamos la decisión de Molina, Caro v. Dávila, *183 supra, y reinstalamos la interpretación de la doctrina de Quintana Martínez v. Valentín, supra. Miranda v. E.L.A., supra, pág. 716.
En suma, en Torres Pérez v. Medina Torres y en los casos subsiguientes Ramos Acosta v. Caparra Dairy, Inc., y Molina, Caro v. Dávila, estimamos procedente el pago com-pleto de la indemnización a las partes a las que no se ad-judicó ningún grado de culpa o negligencia. Dicho proceder tiene como resultado que el demandado luego repita contra el codemandante quien, a su vez, es cocausante del daño, el monto de la indemnización pagado a dichas partes en exceso del grado de culpa que se le ha imputado.
En Ramos Acosta v. Caparra Dairy, Inc., supra, por ejemplo, tal determinación conllevó que el demandado, en un ejercicio de nivelación, pudiera descontar de la indem-nización concedida a la madre del menor accidentado —única demandante a quien se encontró parcialmente res-ponsable de los daños producidos— el monto de dinero pa-gado al padre y a los hermanos codemandantes en exceso del 70% de responsabilidad adjudicado en su contra. El efecto neto fue, por lo tanto, que indirectamente la madre de la víctima pagó una porción de la indemnización de su esposo y sus hijos. Tal resultado contraviene los principios de política pública que subyacen a la doctrina de inmunidad interfamiliar según la cual están prohibidas en nues-tro ordenamiento las acciones en daños entre los miembros del círculo íntimo de la familia. Art. 1810A del Código Civil, 31 L.P.R.A. sec. 5150.(3) Véanse, además: Guerra v. Ortiz, 71 D.P.R. 613 (1950); Fournier v. Fournier, 78 D.P.R. 430 (1955); Drahus v. Nationwide Mutual Ins. Co., 104 D.P.R. 60 (1975); Alonso García v. S.L.G., 155 D.P.R. 91 (2001).
*184 Ahora bien, para evitar tal resultado, en Miranda v. E.L.A., supra, reestablecimos la normativa original ex-puesta en Quintana Martínez v. Valentín, supra, a los efec-tos de que el demandado no debe responder en exceso de su grado de culpa en un caso en el que la víctima mortal del accidente es un menor inimputable cuyos daños son causados, en parte, por un miembro de su círculo familiar íntimo. Procede, en este tipo de caso, disminuir la cuantía total de la indemnización concedida en proporción de la negligencia del codemandante culposo.
Resolvemos que dicha normativa se extiende a un caso donde el menor, víctima directa del hecho dañoso a quien no se puede imputar negligencia, figura como demandante junto a su padre, cocausante del daño. Es decir, en un caso donde un menor sufre daños en parte a causa de la culpa o negligencia de un miembro de su círculo familiar íntimo, procede descontar la proporción de negligencia de dicho familiar del monto total de los daños adjudicados a favor de la parte demandante, independientemente de que implique disminuir la indemnización del menor que sufrió los daños. Entendemos que esta es la solución más justa y equitativa que evita una posterior acción de nivelación de la parte demandada contra el miembro de la familia del menor que haya incurrido en negligencia. Como hemos señalado, el efecto neto de dicha acción sería que, indirectamente, los familiares pagarían una porción de la indemnización correspondiente al menor. No podemos avalar dicho resultado que operaría en contravención a los postulados en que se fundamenta la doctrina de inmunidad interfamiliar. No se trata, entonces, de imputar la negligencia de los padres al menor inimputable, sino de evitar una acción de nivelación que contraviene la doctrina de inmunidad interfamiliar.
En el presente caso, el tribunal de instancia, estimó los daños sufridos por el menor B.M.C. en $50,000. Además, hemos determinado que el padre del niño incurrió en un *185 15% de negligencia en que ocurriera el accidente, mientras que el codemandado José P. Rosario Soto es responsable del restante 85% de los daños. En vista de nuestros pro-nunciamientos, procede reducir la cuantía de la indemni-zación del niño en un 15%. Por. lo tanto, la parte deman-dada está obligada a pagarle una cantidad neta de $42,500. Igual reducción deberá llevarse a cabo en relación con la indemnización que, en su día, se determine corres-ponda a los señores Marcano Serrano y Colón Santos en concepto de sus propios daños.
III
La parte peticionaria sostiene en su cuarto señala-miento que erraron los tribunales inferiores al desestimar su acción contra la Asociación de Condominos del Condo-minio Plaza del Parque y sus aseguradoras. No le ampara la razón.
Del expediente surge que con posterioridad al accidente de B.M.C., la Asociación de Condominos emitió una comu-nicación mediante la cual convocó a los residentes a una reunión para discutir alternativas para prevenir acciden-tes de tránsito en los predios del Condominio. Igualmente, del testimonio.de la Sra. Silvette de Cuarcevil Pérez, ad-ministradora del Condominio Plaza del Parque al mo-mento de los hechos, surge que con posterioridad al acci-dente de B.M.C. ocurrió un incidente en el que un conductor ebrio irrumpió en los predios del complejo, lo cual hizo temer por la seguridad de los niños que jugaban en los alrededores. Luego de este segundo incidente se aña-dieron dos reductores de velocidad al Condominio. Además, la Sra. Luana Pérez, presidenta de la Asociación de Condo-minos del Condominio al momento de los hechos, testificó que antes y después del accidente de B.M.C. hubo inciden-tes con conductores que no observaban las medidas de se-guridad del Condominio.
*186 Si bien esta evidencia tiende a demostrar la presencia de un elemento de previsibilidad, entendemos que los demandantes no lograron satisfacer su carga de la prueba en relación con el elemento de causalidad. Como sabemos, en nuestro ordenamiento rige la teoría de la causalidad adecuada, según la cual “ ‘[n]o es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general’ ”. Pons v. Engebretson, 160 D.P.R. 347, 355 (2003). No encontramos evidencia en el expediente que demuestre un nexo causal entre las posibles actuaciones u omisiones culposas de la Asociación de Condominos y el daño que sufrió el menor. Específicamente, no se demostró que el accidente fuera producto del exceso de velocidad o de la falta de medidas de seguridad en el Condominio. Por lo tanto, no procede la imposición de responsabilidad en contra de dichos codemandados.
IV
A. Nos resta considerar el planteamiento de la parte peticionaria de que erraron los tribunales inferiores al no conceder el pago de costas y honorarios de abogado a su favor.
En nuestro ordenamiento, la concesión de costas en el litigio está gobernada por la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que en lo pertinente a la presente controversia dispone:
(a) Su concesión. — Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en ape-lación, excepto en aquellos casos en que se dispusiera lo con-trario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tra-mitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe re-embolsar a otro.
*187 La parte interesada en recobrar los gastos necesarios incurridos en la tramitación del pleito debe presentar, en un término improrrogable de diez días a partir de la noti-ficación de la sentencia, un memorándum juramentado que incluya las partidas correspondientes.
Si no hubiere impugnación, el tribunal aprobará el memorán-dum de costas, y podrá eliminar cualquier partida que consi-dere improcedente, luego de conceder al solicitante la oportu-nidad de justificar la misma. Regla 44.1(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III.
En el presente caso, el menor B.M.C. resultó victorioso en su acción de daños y perjuicios contra la Cooperativa de Seguros Múltiples y los señores Rosario Soto y Jovet Le Hardy. En cumplimiento con la Regla 44.1 de Procedi-miento Civil anteriormente citada, sus representantes le-gales sometieron a la consideración del Tribunal de Pri-mera Instancia, dentro del término de diez días reglamentario, un memorial de costas debidamente jura-mentado en el cual se detallan las partidas de gastos incu-rridos en la tramitación del pleito ascendentes a $5,229.65. Acompañaron el mismo de fotocopias de las facturas y de los cheques emitidos a tales efectos. Del expediente no surge que la parte demandada se haya opuesto oportuna-mente a dicho memorial. Por lo tanto, procede el pago de costas a favor de la parte demandante.
Cabe señalar que la Cooperativa alega que se liberó de su responsabilidad del pago de costas y honorarios de abo-gado al realizar una oferta de sentencia por el monto de la póliza ($25,000). Dicha oferta fue rechazada por la parte demandante.
La Regla 35.1 de Procedimiento Civil dispone, a tales efectos, que “[s]i la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta tendrá que pagar las costas, gastos y hono- *188 rarios de abogado incurridos con posterioridad a la oferta”. (Énfasis suplido.) 32 L.P.R.A. Ap. IÍI.
Como hemos visto, la conclusión a la que llegamos hoy en relación con la distribución de la responsabilidad entre las partes en litigio tiene como resultado que proceda el pago de $42,500 a favor del menor B.M.C. Por lo tanto, nuestro dictamen es más favorable a la parte demandante que la oferta de sentencia que le hizo la Cooperativa la cual no es, entonces, óbice para que proceda el pago de las cos-tas del litigio a favor de la parte demandante.
B. No podemos llegar a la misma conclusión en relación con el pago de honorarios de abogado. Es norma reiterada que, en nuestro ordenamiento, procede la imposición del pago de honorarios cuando una parte ha incurrido con temeridad o frivolidad en la tramitación del pleito. Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Hemos establecido que el concepto temeridad se refiere a las actuaciones de una parte que hacen necesario un pleito que se pudo evitar o que provocan su indebida prolongación. Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 335 (1998). La imposición de honorarios de abogado y su cuantía es una determinación discrecional del tribunal sentenciador, sólo revisable ante indicios de abuso de discreción por parte del juzgador. Sin embargo, una vez determinada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria. Blás, supra, pág. 334.
Luego de analizar el expediente del caso ante nuestra consideración, concluimos que la parte demandada no ha incurrido en temeridad en el trámite del mismo. La asegu-radora tenía derecho a litigar el aspecto de negligencia comparada en el caso, así como á presentar las demandas contra terceros que, a su mejor entender, podían respon-derle por los daños reclamados en su contra. Por lo tanto, no abusó de su discreción el tribunal de instancia al negar la imposición del pago de honorarios de abogado.
*189 V
En virtud de nuestros pronunciamientos y de los funda-mentos que anteceden, procede modificar la distribución de responsabilidad y ordenar el pago de $42,500 al menor B.M.C. De la misma manera, se revoca la desestimación de la causa de acción de los padres del menor, los Srs. William Marcano Serrano y Vilma Colón Santos, y la Sociedad Legal de Gananciales compuesta por ambos, y se devuelve el caso al foro de instancia para determinar el monto de los daños sufridos por éstos a raíz del accidente en que resultó herido su hijo menor. Se ordena el pago de costas a favor de la parte demandante, las cuales deberá estimar el tribunal de instancia. Por último, se confirma la sentencia récu-rrida en cuanto a la desestimación de las causas de acción contra la Asociación de Condominos y sus aseguradoras, MAPFRE/PRAICO y National Insurance, y la denegatoria de la imposición del pago de honorarios de abogados.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López emitió una opi-nión concurrente y disidente, a la cual se únió la Jueza Asociada Señora Fiol Matta.

 Originalmente se incluyó en la demanda a la Sociedad Legal de Gananciales compuesta por ellos, pero luego trascendió que los señores Rosario y Jovet no esta-ban casados entre sí, por lo que éstos comparecieron individualmente.

 Cabe señalar que el testimonio de la Sra. Silvette de Cuarcevil Pérez fue presentado por la parte demandante luego de que las codemandadas —Asociación de Condominos del Condominio Plaza del Parque y sus aseguradoras— renunciaran a éste y lo pusieran a la disposición de las demás partes en el pleito. Dichas codeman-dadas fueron excusadas de comparecer al resto de los procedimientos cuando presen-taron una moción de desestimación al cabo de la prueba cuyo fallo el tribunal se reservó hasta el momento de dictar sentencia.

 Establece dicho artículo:
“Ningún hijo podrá demandar a sus padres en acciones civiles en daños y per-juicios cuando se afecte la unidad familiar, la institución de la patria potestad y las relaciones paterno-filiales. Disponiéndose, que dicha prohibición no será absoluta y podrá ejercitarse la acción en daños y perjuicios cuando no haya unidad familiar que proteger, ni relaciones paterno-filiales que conservar.” 31 L.P.R.A. see. 5150.